IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHY R. NIX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-25-102-D |
| | ) |
| THE STATE OF OKLAHOMA ex rel., | ) |
| OKLAHOMA CITY | ) |
| COMMUNITY COLLEGE, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support [Doc. No. 10]. Defendant seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

**Factual Background**

Defendant is the State of Oklahoma ex rel., Oklahoma City Community College ("Defendant" or "OCCC"), a governmental entity. Plaintiff, Kathy Nix, is OCCC's former employee. Ms. Nix sues OCCC alleging claims for retaliation under (1) the Rehabilitation Act of 1973 ("Rehabilitation Act") (29 U.S.C. § 701, et seq.), and (2) Title IX of the Education Amendments Act of 1972 ("Title IX") (20 U.S.C. §§ 1681-1688).

According to the complaint, from 2001 through her dismissal in September 2024, Ms. Nix "managed OCCC's website." She did not, however, "have the knowledge or ability

1

to make changes in the website herself. Her role consisted of review and recommendations."

In June 2023, Ms. Nix "directed Modern Campus," a "content management system," to update OCCC's website to ensure 100% Americans with Disabilities Act of 1990 ("ADA") compliance for the visually impaired. Ms. Nix had been accustomed to making such requests in the past. This time, however, OCCC's recently hired Executive Director, Sarah Barrow, "became upset" because Ms. Nix did not obtain Ms. Barrow's prior approval.

Around the same time, Ms. Nix reviewed certain graphic design changes proposed by Robert Ruiz, OCCC's Interim Marketing Director. Ms. Nix "discovered [that the proposed changes were] 80% noncompliant under the ADA[.]" Ms. Nix then approached Ms. Barrow about the problem but was told "you are going to do what I'm telling you to do whether you like it or not."

After that conversation, Ms. Nix began to discuss ADA compliance with staff "outside of her chain of command." Specifically, she spoke with OCCC's Disability Coordinator and OCCC's Chief Development Officer.

Shortly thereafter, several OCCC employees informed Ms. Nix about a screenshot of a conversation held over Microsoft Teams between Ms. Barrow and OCCC's Director of Communications. In the screenshot, Ms. Barrow complained "about Ms. Nix fussing over OCCC's website," adding that Ms. Nix was "way overpaid and just whines."

On September 6, 2023, Ms. Nix reported to OCCC's Title IX reporting office that she was experiencing workplace harassment and discrimination. According to the

2

complaint, "Ms. Nix had a good faith belief that she had been discriminated against … on the basis of her reports of non-compliance with the ADA when she reported workplace harassment and discrimination to OCCC's Title IX office."

Two days later, Ms. Nix was dismissed. In the complaint, Ms. Nix states that performance-based rationalizations were later invented to justify her discharge.

## Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In assessing plausibility, a court should first disregard conclusory allegations and "next consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief" under the legal theory proposed. *Id.* at 681; *see Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

## Analysis

1. *Retaliation under the Rehabilitation Act*

The Rehabilitation Act "prohibits discrimination against handicapped persons in any program or activity receiving federal financial assistance." *U.S. Dep't of Transp. v.*

*Paralyzed Veterans of Am.*, 477 U.S. 597, 599 (1986). To state a claim for retaliation under the Rehabilitation Act, a plaintiff must show 1) that she engaged in a protected activity; 2) that she suffered a materially adverse action either after or contemporaneous with her protected activity; and 3) a causal connection between the protected activity and the adverse action. *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010).

In its motion to dismiss, Defendant asserts that Plaintiff has failed to allege facts sufficient to show that Ms. Nix engaged in protected activity. According to Defendant, the so-called "Manager Rule" renders Ms. Nix's actions unprotected under the Rehabilitation Act.

The Manager Rule was recognized by the Tenth Circuit in *McKenzie v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir. 1996). There, the Circuit addressed the definition of "protected activity" in the context of a claim for retaliation under the Fair Labor Standards Act.[1] The

---

[1] Defendant cites *Weeks v. Kansas,* 503 F. App'x 640, 643 (10th Cir. 2012) (unpublished), for the proposition that the Tenth Circuit has also applied the Manager Rule to cases alleging retaliation in the Title VII context. Defendant therefore argues this Court should extend the Manager Rule to retaliation claims under the Rehabilitation Act for the same reasons.

*Weeks*, however, does not clearly dictate Defendant's proposed outcome. In fact, *Weeks* seems to indicate that *McKenzie*'s ongoing relevance is in doubt. As then-Circuit Judge Gorsuch, wrote,

> "A few years ago, and well after *McKenzie*, the Supreme Court suggested that all one has to do to oppose an unlawful employment practice in Title VII cases is to 'antagonize ...; contend against; ... confront; resist; or withstand' [the unlawful practice]. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009). Whether and how this general standard meshes with *McKenzie's* preexisting and more particular [Manager] [R]ule

4

court held that protected activity requires a plaintiff to "step outside his or her role of representing the company and either file or threaten to file an action adverse to the employer, actively assist other employees in asserting [statutory] rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of [those protected rights]." *Id.* at 1486-87 (editing citations to the Fair Labor Standards Act). According to Defendant, because Ms. Nix managed the website, nothing in her complaint demonstrated that she stepped outside of her role representing the company.

In her Response, Plaintiff challenges Defendant's argument both factually and legally. Factually, Plaintiff points out that she did not directly control the website, she complained to employees outside of her chain of command, and ultimately reported the OCCC's alleged discrimination to the school's Title IX office. Importantly, the complaint did not allege that Ms. Nix oversaw the website's ADA compliance. Plaintiff therefore asserts that the Manager Rule is inapplicable because she stepped outside of her role to actively engage in activities directed toward the assertion of statutorily protected rights.

---

for retaliation claims … *is not clear*. But this [was not raised] in the district court—or, for that matter in this court [and we therefore do not rule on it]." *Weeks*, 503 F. App'x at 643 (emphasis added).

*Id*; *see also Loudon v. K.C. Rehab. Hosp., Inc.*, 339 F. Supp. 3d 1231, 1238, n. 3 (D. Kan. 2018) ("Post-*Crawford*, the Tenth Circuit declined to address *Crawford's* impact. [Citing *Weeks*]."); *Robinson v. Wichita State Univ.*, No. 16-2138-DDC-GLR, 2018 WL 836294, at *4 (D. Kan. Feb. 13, 2018) (stating *Weeks* presented "materially different facts" than cases invoking the Manager Rule); *but see DeMasters v. Carilion Clinic*, 796 F.3d 409, 424 n.8 (4th Cir. 2015) (stating the Tenth Circuit "adopted the 'manager rule' in the Title VII context [in *Weeks*]").

At this stage in the litigation, the Court accepts all well-pled facts and adopts all reasonable inferences in the light most favorable to the nonmoving party. Each of the facts that Plaintiff highlights could reasonably be interpreted as falling outside the purview of Ms. Nix's role with the OCCC. The Court therefore finds that the Manager Rule is inapplicable, and Plaintiff has alleged minimally sufficient facts to demonstrate a claim upon which relief can be granted for retaliation under the Rehabilitation Act.

Having found for Plaintiff that she has alleged sufficient facts to avoid dismissal, the Court has no need to address Plaintiff's legal argument—that the Manager Rule has either been narrowed by later Supreme Court precedent—*see supra* Footnote 1—or else is not applicable to claims for retaliation under the Rehabilitation Act.

2. *Retaliation Under Title IX*

Defendant argues that Ms. Nix failed to allege a cause of action for retaliation under Title IX. In Defendant's understanding, Title IX provides a private cause of action for individuals who have been retaliated against for complaining specifically about discrimination on the basis of sex. And because according to Plaintiff's complaint, "Ms. Nix had a good faith belief that she had been discriminated against … *on the basis of her reports of non-compliance with the ADA*," remedies under Title IX are unavailable.

Plaintiff responds, arguing that Title IX affords broader protection. In support, she cites *Neely v. City of Broken Arrow, Oklahoma*, No. 07-CV-0018-CVE-FHM, 2007 WL 1574762, at *2 (N.D. Okla. May 29, 2007) (addressing Title VII), and *Robinson v. Wichita State Univ.*, No. 16-2138-DDC-GLR, 2018 WL 836294 (D. Kan. Feb. 13, 2018).

In *Neely*, the court ruled "that a plaintiff can successfully maintain a retaliation claim even if the conduct which the plaintiff opposed (i.e. the underlying conduct) does not actually violate Title VII." *Neely*, 2007 WL 1574762, at *2. According to Plaintiff, the same should be true of Title IX. In *Robinson*, the court found that "[e]ducational institutions [ ] can incur liability under Title IX if they retaliate against a person who has complained about discrimination aimed at the complainant." *Robinson*, 2018 WL 836294, at *3. Because the *Robinson* court used broad language, Plaintiff argues that she has a cause of action for retaliation under Title IX even though the complained-of underlying discrimination was not based on sex.

Upon consideration of the relevant caselaw, the Court agrees with Defendant.[2] In *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005) the Supreme Court recognized a private actionable claim for retaliation under Title IX. The Supreme Court specifically held that "Title IX encompasses claims of retaliation" so long as "the funding recipient retaliates against an individual because [s]he has complained *about sex discrimination*." *Id.* at 171 (emphasis added); *see also Doe through Doe v. Rocky Mountain Classical Acad.*, 99 F.4th 1256, 1262 (10th Cir. 2024) ("To state a Title IX retaliation claim, Plaintiff must allege that [the defendant] retaliated against him *because* he complained of sex discrimination.") (emphasis original) (citing *Jackson*, 544 U.S. at 184); *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (Title IX "prohibits retaliation against individuals because they have complained of sex discrimination.").

---

[2] *Twombly*, 550 U.S. at 555 ("[T]he tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.").

7

Plaintiff's two cited cases are taken out of context. In *Neely*, the court stated, "[a] plaintiff need [ ] show that he had a reasonable and good faith belief that he opposed or participated in the investigation of conduct made unlawful under Title VII." *Neely*, 2007 WL 1574762, at *2. The *Neely* court thereby made clear that the underlying discrimination in that case bore some relation to the plaintiff's claim for retaliation under the pertinent statute. The same is true in *Robinson*. *See Robinson*, 2018 WL 836294, at *3 ("the Complaint allege[d] that plaintiff helped others assert rights under Title IX."). Therefore, neither case provides a basis by which to conclude a plaintiff may have a cause of action for retaliation arising from a statute that bears no relation to the complained-of discrimination.

Here, Ms. Nix did not complain about underlying discrimination on the basis of sex, but on the basis of disability. Her decision to complain to OCCC's Title IX office does not give her a cause of action sounding in Title IX. Defendant's motion to dismiss is therefore granted as to this point, and Plaintiff's claim for retaliation under Title IX is dismissed.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support [Doc. No. 10] is **GRANTED** in part and **DENIED** in part as set forth herein.

**IT IS SO ORDERED** this 7th day of July, 2025.

TIMOTHY D. DeGIUSTI
Chief United States District Judge